Sanjay Wadhwa
Wendy B. Tepperman
Nancy A. Brown
Karen E. Willenken
Victor Suthammanont
Attorneys for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-1023 (Brown)
Email: BrownN@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>    -- against --<br><br>BRIAN S. BLOCK and<br>LISA PAVELKA MCALISTER,<br><br>             Defendants. | 16 Civ. 7003 (   )<br><br>ECF Case<br><br><br>COMPLAINT<br>AND JURY DEMAND |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendants Brian S. Block ("Block") and Lisa Pavelka McAlister ("McAlister") (together,

"Defendants"), alleges:

## PRELIMINARY STATEMENT

1.      This case concerns a fraudulent scheme in 2014 to manipulate and falsely report a

key financial metric at the largest publicly traded net lease real estate investment trust ("REIT"),

then known as American Realty Capital Properties Inc. ("ARCP" or the "Company"). Both

Block and McAlister, ARCP's then Chief Financial Officer and Chief Accounting Officer, respectively, played critical roles in orchestrating the scheme.

2.      For financial reporting purposes, publicly traded issuers in the United States must follow accounting standards established by the Financial Accounting Standards Board and rules adopted by the Commission, which are commonly known as generally accepted accounting principles, or GAAP.  The GAAP metrics used by investors to assess an issuer's performance typically include net income and earnings per share ("EPS").  Like most REITs, however, ARCP had a practice of publicly reporting a non-GAAP financial metric, Adjusted Funds From Operations ("AFFO"), which its management and the market viewed as a key metric of the Company's performance.  Many analysts and investors view AFFO as the most useful indicator of the REIT's ongoing performance and ability to pay dividends.  AFFO is an "adjusted" version of a standardized metric of REIT operating performance, Funds From Operations ("FFO"), defined by the National Association of Real Estate Investment Trusts ("NAREIT").

3.      Before ARCP filed its Form 10-Q for the first quarter of 2014 ("1Q14") on May 8, 2014, senior ARCP accounting personnel raised concerns to ARCP's senior executives, including Block and McAlister, about the method by which ARCP had been calculating AFFO and AFFO per share, and the possibility that ARCP might overstate its AFFO by a material amount for that quarter if the method was incorrect.  Notwithstanding those concerns, Block indicated his approval to file as-is.  McAlister, despite understanding that the AFFO method was incorrect, did not object.  On May 8, 2014, ARCP filed the Form 10-Q and related documents with the AFFO and AFFO per share numbers included as originally calculated.

4.      Subsequently, ARCP accounting personnel confirmed internally that ARCP's method for calculating AFFO and AFFO per share (including for 1Q14) had been incorrect, and

that, as a result, ARCP had overstated its 1Q14 AFFO by $12 million (out of $147 million), or $0.03 a share on a per share basis (out of $0.26).  In their respective roles as Chief Financial Officer and Chief Accounting Officer, Block and McAlister were briefed regularly on the AFFO calculation issue.  McAlister directly supervised the accounting personnel who conducted this analysis.  However, Block and McAlister failed to first grapple with the matter until the evening before ARCP filed its second quarter 2014 ("2Q14") Form 10-Q and related disclosures.

5.     That evening, in a meeting with McAlister and another member of the accounting staff (the "Accountant"), Block devised a scheme to conceal ARCP's 1Q14 AFFO calculation error and also meet the company's 2Q14 targeted AFFO per share numbers.

6.     The scheme involved adding false amounts or a "plug" to several figures without any basis (the "plugged numbers") in an internal spreadsheet that the Company used to calculate AFFO and AFFO per share for 2Q14 and for the six-month period from January through June 2014—the first half period ("FH14").  With McAlister and the Accountant in his office, Block fabricated these plugged numbers and typed them into the spreadsheet.

7.     By using these plugged numbers, ARCP concealed from investors that it had overstated its AFFO per share for 1Q14 by $0.03 per share out of $0.26 per share, overstated its AFFO per share for 2Q14 by $0.01 per share, and overstated its AFFO per share for FH14 by $0.03 out of $0.49.[1]  Without these overstatements, ARCP would not have met analyst consensus projections for these periods.

8.     On the morning of July 29, 2014, ARCP filed a Form 10-Q, signed by both Block and McAlister, which included the overstated 2Q14 and FH14 total AFFO.  The same day,

---

[1]     As is typical when public companies report their earnings, ARCP's practice was to round up or down to the nearest penny.  All per-share amounts referenced in this Complaint are presented on a rounded basis.

ARCP filed a more detailed financial schedule on Form 8-K, and its management conducted an "earnings call" in which it discussed the quarterly and year-to-date results with investors and analysts.  These disclosures included the same misleading AFFO information, as well as the misleading per-share AFFO amounts.

9.      By virtue of the conduct alleged herein, Defendants Block and McAlister have violated and/or aided and abetted the other Defendant's and/or ARCP's violations of, and unless restrained and enjoined, will continue violating, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"),  15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R.§ 240.10b-5; and Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-11, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-11 and 240.13a-13.  In addition, Defendant Block violated, and unless restrained and enjoined, will continue violating, Rule 13a-14, 17 C.F.R. § 240.13a-14, promulgated under Section 13(a) of the Exchange Act.

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

10.      The Commission brings this action pursuant to the authority conferred on it by Sections 21(d)(1), (2), (3), and (5) of the Exchange Act, 15 U.S.C. §§ 78u(d)(1), 78u(d)(2), 78u(d)(3), and 78u(d)(5), seeking a final judgment:  (a) permanently restraining and enjoining Block and McAlister from engaging in the acts, practices and courses of business alleged herein; (b) permanently restraining and enjoining Block and McAlister from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d); (c) requiring Block and McAlister to disgorge ill-gotten gains and to pay prejudgment interest thereon; and (d) imposing civil money penalties on Block and McAlister pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3) .

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to Sections

21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

12.     Venue is proper in the Southern District of New York pursuant to Section 27 of

the Exchange Act, 15 U.S.C. § 78aa.  Defendants, directly or indirectly, have made use of the

means or instruments of transportation or communication in interstate commerce, or of the mails,

or of a facility of a national securities exchange in connection with the transactions, acts,

practices and courses of business alleged in this Complaint.  Certain of these transactions, acts,

practices and courses of business occurred in the Southern District of New York, including,

among other things, Block's preparation of the fraudulent AFFO schedule, and calls between

McAlister and ARCP's auditors during which McAlister fraudulently concealed the falsification

of the AFFO and AFFO per share figures.

## THE DEFENDANTS

13.     **Block**, age 44, resides in Hatfield, Pennsylvania.  Block served as CFO of ARCP

from ARCP's inception in 2010 until his resignation on October 28, 2014.  Block is a CPA

licensed in Pennsylvania.

14.     **McAlister**, age 52, resides in Arlington, Massachusetts.  On November 4, 2013,

McAlister was appointed Chief Accounting Officer of ARCP.  She became an executive officer

and Principal Accounting Officer of ARCP on May 29, 2014 and served in these roles until her

resignation on October 28, 2014.  McAlister is a CPA licensed in New York.

## THE RELEVANT ENTITY

15.     **American Realty Capital Properties, Inc**. (now known as VEREIT, Inc., but

referred to in this Complaint as "**ARCP**" or the "Company"), was at all relevant times a publicly

traded REIT traded on NASDAQ's Global Select Market (ticker: ARCP).  ARCP is a Maryland

corporation and its headquarters were in New York, New York during the relevant time period.

At the time of the scheme alleged in this Complaint, ARCP reported total assets of

approximately $21 billion.

## FACTS

### AFFO and AFFO Per Share

16.     FFO and AFFO are two non-GAAP measures, commonly used by investors to

evaluate the performance of REITs, that make certain adjustments to the REIT's GAAP-based

net income or loss in order to provide an alternative presentation of its performance.

17.     FFO is a standardized measure of REIT operating performance defined by

NAREIT as:  GAAP net income or loss "excluding gains or losses from sales of property, and

adding back real estate depreciation."

18.     Although AFFO has no standardized definition, it is typically understood by REIT

managers, their investors and market analysts as FFO with further adjustments to exclude certain

non-cash income and expense items (*e.g.*, unrealized gains and losses) and certain "special" or

"non-routine" expenses (such as merger and acquisition-related expenses) that are expensed-as-

incurred under GAAP.

19.     REIT investors and analysts typically consider AFFO a measure of "normalized"

residual cash flow after eliminating non-cash and non-recurring expenses, and an indicator of a

REIT's ability to pay dividends.

20.     As reflected in both internal and external communications, at all relevant times,

AFFO was the single most important performance metric to ARCP management.  ARCP

publicly provided earnings guidance in the form of projected full-year AFFO per share and

internally prepared models for forecasting performance and evaluating potential transactions in terms of impact to AFFO per share.

21.     ARCP included only FFO and AFFO per-share calculations – not earnings per share – in its earnings releases, financial supplements, and presentations furnished with Forms 8-K that ARCP filed contemporaneously with its Form 10-Q and Form 10-K filings.

22.     Annual AFFO per share was one of the performance criteria established in early 2014 to determine ARCP's senior executives' annual bonuses.  Block's base salary was $500,000 per year, plus equity and cash incentive compensation based upon achievement of certain goals labeled "threshold," "target," and "maximum."  According to a compensation plan established for senior executives in 2014, among the financial metrics that would be used to determine Block's incentive compensation were AFFO per share goals of $1.06 per share ("threshold"), $1.13 per share ("target"), and $1.16 per share ("maximum").

23.     ARCP provided the market a series of projections for 2014 AFFO per share beginning in early 2013, in connection with announcements about quarterly earnings and announced transactions.  On October 23, 2013, ARCP updated its fiscal year 2014 per share AFFO projection to a range of $1.13 to $1.19.  That projection remained unchanged from October 2013 through July 2014, and it was reaffirmed on numerous occasions during that period, including in a February 27, 2014 investor presentation furnished as an exhibit to a Form 8-K.

24.     Market analysts also watched ARCP's AFFO results closely, and many included in their reports their predictions of ARCP's quarterly and annual AFFO per share results.

25.     Because FFO and AFFO are non-GAAP measures, ARCP was required by Commission regulations to provide a reconciliation of those metrics to the "most directly

comparable GAAP financial measure." *See* 17 C.F.R. §§ 228, 229, 244 and 249. The most directly comparable GAAP measure to FFO and AFFO is net income. And FFO per share or AFFO per share is most directly comparable to GAAP's EPS metric.

### The Operating Partnership and Non-Controlling Interests

26.     ARCP, like many REITs, conducts substantially all of its business activities through an operating partnership (the "OP"). At all relevant times, ARCP was the sole general partner of the OP and owned in excess of 95% of its equity interests (the "OP units"). The remainder OP units (*i.e.*, those not owned by ARCP) were held by certain affiliated and unaffiliated investors and could be redeemed for a corresponding number of ARCP shares (or cash, at ARCP's election) after a one-year holding period.

27.     Under GAAP, these remainder OP units are deemed non-controlling interests ("NCI"). GAAP requires the consolidated income statement of ARCP to present net income or loss on a consolidated basis, as well as to identify separately the net income or loss attributable to the Company and to the NCI. As such, ARCP reported both forms of its net loss: one that included the total operations of ARCP and the OP, without eliminating the portion of the consolidated net loss that was attributable to the NCI interests (identified simply as "net loss"), and one that eliminated from the net loss the portion of the consolidated net loss that was attributable to the NCI interests (identified as "net loss attributable to the Company").

28.     Similarly, FFO and AFFO may be presented on a basis that includes NCI and reconciles to consolidated net income or loss, or on a basis that excludes NCI and reconciles to net income or loss attributable to the Company. If it reconciles to consolidated net loss, the adjustments made to calculate FFO and AFFO should be of the gross reported amounts of the adjustment items added back. To properly calculate FFO and AFFO per share under this method, the share count divisor would include the shares into which the NCI holders OP units

can be converted ("the NCI shares").  This Complaint refers to this method, which essentially gives credit for 100% of the results and shares of the OP, as the "gross method."  If the Company reconciles to "net loss attributable to the Company," the adjustments made to calculate FFO and AFFO should be adjusted by only the Company's portion of the applicable adjustment items added back, excluding that portion of the adjustment items that is attributable to NCI.  To properly calculate FFO and AFFO per share under this method, the share count divisor would exclude the NCI shares.  This Complaint refers to this method as the "net method."  Both methods are internally consistent and both should produce virtually the same FFO or AFFO per share if properly calculated.

29.     Prior to 2Q14, ARCP represented that it was presenting FFO and AFFO on a "net" basis.  However, as described in this Complaint, for its 1Q14 Form 10-Q, ARCP instead used an improper hybrid method to calculate AFFO and AFFO per share that overstated its results.

**ARCP's Improper Hybrid Method of Calculating AFFO in First Quarter 2014**

30.     On May 8, 2014, ARCP reported a net loss attributable to the Company of approximately $332 million, total FFO of negative $184 million, and total AFFO of approximately $147 million (positive) for 1Q14 in its Form 10-Q, and reported AFFO per share of $0.26 in a variety of related supplemental earnings materials furnished as exhibits to Forms 8-K filed on the same date.

31.     In announcing the results, ARCP affirmed that it was maintaining its earnings guidance for 2014 of an AFFO per share range of $1.13 to $1.19 and stated that the reported AFFO per share of $0.26 for the quarter was "in line with management estimates."

32.     In its Form 10-Q for 1Q14 and related supplemental earnings materials, ARCP purported to report FFO in accordance with NAREIT's definition and to report both FFO and

AFFO on a "net" basis, as it had in prior reports since at least its Form 10-K for the year ended December 31, 2012 ("FY12"). Specifically, ARCP's reports reconciled FFO and AFFO to "net loss attributable to the Company" and its Form 10-Q and 10-K further represented that the "[a]mounts are presented net of any non-controlling interest effect where applicable."

33. As explained above, under the "net method," the FFO and AFFO calculations begin with net income or loss attributable to the Company (*i.e.*, **excluding** amounts attributable to NCI holders), adjust or "add back" only the Company's portion of the applicable line items, and the result is divided by a share number that **excludes** the NCI shares. In contrast, under the "gross method," the FFO and AFFO calculations start with net income or loss attributable to both the Company and the NCI holders on a consolidated basis, and then adjust or "add back" the gross amounts of the applicable line items, and the result is divided by a share number that **includes** the NCI shares.

34. However, despite representing that it was reporting FFO and AFFO on a "net" basis, ARCP in 1Q14 and prior periods followed neither the "net method" nor "gross method." Instead, ARCP improperly used elements of both methods in its annual and quarterly reports from at least the first quarter of 2013 through 1Q14: ARCP began the calculation with the net loss attributable to the Company (*i.e.,* a loss that was smaller than the consolidated net loss), made adjustments (most of which were positive) using the gross amounts of the applicable items (*i.e.*, both the Company's portion **and** the NCI holders' portion of these items, rather than only the Company's portion, resulting in an increase in the total dollar amount of those adjustments and, in turn, an increase in positive AFFO), and divided by a share count that excluded the NCI shares (*i.e.*, a lower share count, resulting in greater AFFO per share). This Complaint refers to this method, which ARCP used in 1Q14 and prior periods, as the "improper hybrid method."

35.     ARCP's AFFO using the "net method" correctly would have been approximately $135.8 million in total and $0.23 per share for 1Q14.  ARCP's improper hybrid method calculation thus overstated 1Q14 AFFO by approximately $12 million in total and $0.03 per share.

**Block and McAlister Ignored Concerns Raised About the Improper Hybrid Method**

36.     Shortly before the 1Q14 Form 10-Q was filed, senior ARCP accounting personnel, including the Accountant, raised concerns about ARCP's method of calculating AFFO to Block, McAlister, and other senior executives.  Despite those concerns, Block instructed that they file the Form 10-Q as-is.  McAlister understood that ARCP's method of calculating AFFO was incorrect, but she took no action to prevent the filing.  As a result, ARCP's Form 10-Q and related earnings materials were filed with the improper hybrid method calculation.  Neither Block nor McAlister took steps to inform the Board of Directors, the Audit Committee, or the external auditors of the error or the concerns raised to them by ARCP's senior accounting personnel.

37.     Having previously raised the issue in early May 2014 before the 1Q14 Form 10-Q was filed, the Accountant again analyzed ARCP's 1Q14 AFFO calculation, compared it to the proper "net method" calculation, and repeatedly advised Block, McAlister and others that he believed ARCP had made a mistake in its 1Q14 AFFO calculation, and thus, had reported incorrect results.

38.     For example, by no later than May 23, 2014, the Accountant had informed McAlister that he believed the 1Q14 AFFO results, using either a calculation under the "net method" or the "gross method," should have been $0.23 per share, rather than the $0.26 per share ARCP reported.

39.     McAlister participated in numerous meetings and conference calls with the Accountant and other ARCP employees concerning the AFFO calculation issue in May 2014 through July 2014.  Block also participated in several of these meetings and calls during which the issue was discussed.  McAlister also received, and in at least one case sent to Block, spreadsheets prepared by the Accountant that illustrated the $0.03 difference between the as-reported and properly calculated 1Q14 AFFO per share.

**Block and McAlister Knowingly Permitted ARCP's Audit Committee to Approve a Version of the 2Q14 Form 10-Q That Incorporated the Incorrect 1Q14 AFFO**

40.     For both quarterly filing and revenue-projection purposes, ARCP employees worked on various AFFO schedules throughout July in anticipation of reporting results for 2Q14 before market-open on July 29, 2014.  Block and McAlister requested and received many of these schedules.

41.     Block and McAlister were aware that, although the 1Q14 AFFO calculation would not explicitly appear in the 2Q14 Form 10-Q, ARCP would need to report not only the 3-month 2Q14 AFFO results, but also its AFFO results for the first half of the year (FH14) in the Form 10-Q.  In order accurately to report the FH14 AFFO results, ARCP would have to add the first and second quarter amounts for each line in the calculation.  Block and McAlister understood that if ARCP used the original, as-reported 1Q14 amounts, its FH14 results would be overstated.

42.     Although both Block and McAlister were aware that a 2Q14 Form 10-Q that incorporated the reported AFFO amounts in ARCP's 1Q14 filing would overstate ARCP's FH14 AFFO results, neither instructed the ARCP accounting staff to correct the improperly-calculated 1Q14 AFFO amounts when preparing the 2Q14 Form 10-Q and related disclosures.

43.     Block and McAlister also were aware that ARCP would report AFFO for both 1Q14 and 2Q14 in a document titled "Quarterly Supplemental Information," to be furnished on Form 8-K the same day ARCP filed the Form 10-Q.

44.     Throughout June and July, McAlister and other ARCP senior managers tracked analysts' estimates of ARCP's second quarter AFFO per share.

45.     Throughout most of July, McAlister worked with ARCP's accounting staff to identify a number of accounting reclassifications and adjustments they could use to help ARCP report AFFO results that were consistent with analysts' consensus AFFO estimates for 2Q14.

46.     ARCP was scheduled to file its 2Q14 Form 10-Q, and make its related disclosures, before market-open on the morning of July 29, 2014.

47.     Block and McAlister authorized the Accountant to circulate a draft of the Form 10-Q to ARCP's Audit Committee on July 24, 2014.  The FH14 AFFO calculation in that document incorporated results for the first quarter that were calculated using the improper hybrid method, and the 2Q14 AFFO amounts were calculated using the correct "net method," creating an improperly inflated FH14 AFFO.  Block and McAlister both received copies of the email circulating the draft, and they participated in the July 25, 2014 meeting with the Audit Committee to discuss the filing and other matters.

48.     Although Block and McAlister understood that the AFFO schedule contained incorrectly calculated AFFO amounts from 1Q14 in reporting the FH14 AFFO results, neither Block nor McAlister informed the Audit Committee of the error or of any plans to change the AFFO schedule in the 2Q14 Form 10-Q before it was filed.

49.     Having received no instruction from Block or McAlister to correct the previously reported 1Q14 AFFO amounts, on July 27, 2014, the Accountant sent Block, copying McAlister,

an AFFO schedule in which he noted in the cover email that "we are using Q1 as reported" to calculate ARCP's FH14 (year-to-date) amounts. The Accountant suggested scheduling a call to discuss the schedule later that day. The schedule, like the draft Form 10-Q circulated to the Audit Committee, included the reported improper hybrid method amounts, and the 2Q14 AFFO amounts calculated using the correct "net method," creating an improperly inflated FH14 AFFO result. Block and McAlister understood that unless they instructed the Accountant otherwise, the Accountant would use this schedule in the 2Q14 Form 10-Q.

50.     Neither Block nor McAlister instructed the Accountant that ARCP should not use the improperly calculated 1Q14 AFFO amounts that had been previously reported.

### Block and McAlister Represented to ARCP's Auditors That They Had No Knowledge of Any Fraud Affecting the Company

51.     On the evening of July 28, 2014, the engagement partner responsible for the audit of ARCP's financial statements informed McAlister that he planned to sign off on ARCP's 2Q14 Form 10-Q filing upon receipt of a representation letter from its management. He provided a draft letter for their review and signature.

52.     McAlister informed Block of this development.

53.     Block and McAlister both signed the representation letter.

54.     In the letter, Block and McAlister represented, among other things, that they had "no knowledge of fraud or suspected fraud affecting the Company. . . ."

### Block Added the Plugged Numbers to the AFFO Schedule

55.     Late in the evening of July 28, 2014, McAlister and the Accountant met with Block in his office about ARCP's AFFO calculation.

56.     With McAlister and the Accountant sitting in his office, Block began preparing a spreadsheet in which he calculated AFFO and AFFO per share for 1Q14, 2Q14 and FH14 using

the gross method. Using this method properly, however, would have revealed the 1Q14 AFFO per share overstatement of $0.03 per share. In addition, a correct calculation of 2Q14 AFFO would have shown that ARCP only achieved $0.23 per share (versus analysts' consensus expectations of $0.24) and $0.46 for FH14 (out of an annual projected AFFO of $1.13 to $1.19).

57.     Block then made several changes to inflate the figures while knowing that the changes were improper and unsupported. Block added a total of approximately $13.1 million in unsupported plugged amounts to a certain line item in both the 1Q14 and 2Q14 AFFO calculations, which enabled ARCP to mask the overstatement of ARCP's reported 1Q14 AFFO as well as to meet analysts' consensus estimates for 2Q14 AFFO per share of $0.24. Block also improperly deducted millions of shares from the weighted shares outstanding for FH14, thereby improperly inflating the FH14 AFFO per share from $0.46 to $0.49.

58.     After Block entered these figures, Block instructed the Accountant to use the numbers and calculations from the spreadsheet he had just prepared in ARCP's 2Q14 Form 10-Q. McAlister told the Accountant that she would speak with the auditors.

59.     At 10:59 p.m., Block sent his spreadsheet of manipulated AFFO calculations to McAlister and the Accountant by email.

60.     Block and McAlister knew or were reckless in not knowing that the numbers Block inserted were unsupportable and resulted in an inaccurate AFFO calculation, and that including them in ARCP's 2Q14 Form 10-Q, earnings supplement and other disclosures would render those disclosures materially misleading.

### McAlister and Block Misled ARCP's Auditors

61.     At 11:20 p.m., McAlister spoke for less than two minutes with the audit manager at ARCP's audit firm. On that call, McAlister indicated that additional changes would be made to the Form 10-Q later that evening, but she did not tell her about Block's insertion of the

plugged numbers into the total AFFO calculation, or raise any concerns about his doing so. The manager later indicated to McAlister by email that the auditors would review the revised filing.

62.     At 12:02 a.m. on July 29, 2014, the Accountant sent a slightly revised version of the calculations to Block and McAlister for their signoff. The Accountant's revised version did not remove any of Block's plugged numbers.

63.     At 1:19 a.m., an updated draft of the Form 10-Q, containing Block's fabricated AFFO numbers, was emailed to ARCP's auditors, copying McAlister, an in-house attorney, and other ARCP employees. The email included a blacklined version of the Form 10-Q, which reflected that the only changes were to the AFFO table.

64.     The manager at ARCP's audit firm did not respond to the email attaching the updated filing, nor did she alert the auditor's engagement partner to the changes.

65.     Upon receiving the blackline, the in-house attorney forwarded it to ARCP's General Counsel, who called McAlister seeking an explanation of the changes. When he did not promptly receive a telephone call back, the General Counsel emailed McAlister at approximately 3:30 a.m. to ask whether the auditors had signed off on the AFFO calculation.

66.     At approximately the same time, McAlister contacted the engagement partner and manager of the audit firm seeking approval to file the Form 10-Q. In neither of these contacts did McAlister mention the AFFO calculation method or the use of plugged numbers. Nor did she give either of the auditors any indication that special attention to the changes was warranted. The engagement partner, who had previously signed off on the filing and had not been alerted to the existence of the changes, texted back his approval.

67.     At no point did either Block or McAlister seek to withdraw or modify their prior representation to the auditors that they were aware of no fraud affecting ARCP.

68.     At approximately 4:00 a.m., the General Counsel spoke with McAlister by telephone. McAlister told him that the AFFO calculation had changed because ARCP had switched from the net method to the gross method.  She did not mention making additional adjustments to any line items; nor did she express confusion or doubt about the accounting. When the General Counsel attempted to probe further, McAlister told him that she had discussed the revisions with the auditors and had obtained their signoff on the change in methodology.

**ARCP's Materially Misleading 2Q14 Form 10-Q and Related Disclosures**

69.     On July 29, 2014, at approximately 6:00 a.m., ARCP filed its 2Q14 Form 10-Q, reporting total AFFO on a purportedly gross method basis for 2Q14 of $205.3 million and FH14 or YTD AFFO of $353 million.

70.     The amounts previously reviewed and authorized by the Audit Committee, presented on a purportedly net method basis, were $198.6 million for 1Q14, and $346.4 million for FH14 AFFO.  Neither Block nor McAlister notified the Audit Committee of the changes nor sought its approval before the filing occurred.

71.     Block signed the Form 10-Q as ARCP's Principal Financial Officer.

72.     McAlister signed the Form 10-Q as ARCP's Principal Accounting Officer.

73.     Block also signed a certification, pursuant to Exchange Act Rule 13a-14(a), falsely attesting that, based on his knowledge, the report fairly presented in all material respects the financial condition, results of operations and cash flows of ARCP, and that the report did not "contain any untrue statement of a material fact."

74.     In addition, Block signed a certification, pursuant to 18 U.S.C. 1350, and furnished pursuant to Exchange Act Rule 13a-14(b), falsely certifying that "all information contained in [ARCP's Form 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

75.     Later that morning, ARCP filed a related Form 8-K furnishing a press release and supplemental financial presentation, reporting AFFO per share figures of $0.24 for 2Q14 and $0.49 for FH14.  ARCP's press release highlighted its total reported AFFO and AFFO per share figures and affirmed the prior 2014 guidance range.

76.     ARCP also filed a second Form 8-K attaching an investor presentation.  This presentation included a slide titled "AFFO Guidance Reconciliation," in which the Company predicted that, based on FH14 AFFO of $353 million, ARCP expected to earn $1.14 AFFO per share for the full fiscal year.  This amount was within ARCP's previously-stated guidance range of $1.13 to $1.19.

77.     On July 29, 2014, at 11:00 a.m., ARCP's management conducted a conference call with analysts to discuss the second quarter results.  On the call, Block falsely reported 2Q14 AFFO per share of $0.24 and reiterated ARCP's guidance of $1.13 to $1.19 for the year.

78.     As a result of Block's and McAlister's fraudulent actions, ARCP publicly overstated its total AFFO by approximately $1.6 million for 2Q14 and $13.6 million for FH14. These amounts were material to investors.

79.     As a result of Block's and McAlister's fraudulent actions, ARCP publicly overstated its AFFO per share by $0.01 for 2Q14 and $0.03 for FH14.  These amounts were material to investors.

80.     As a result of Block's and McAlister's fraudulent actions, ARCP failed to disclose the fact that it had overstated AFFO—its most important financial metric—when it reported its financial results for the previous quarter, 1Q14, and affirmatively misrepresented its FH14 AFFO per share results.  This fact was material to investors.

81.     Block and McAlister knew, or were reckless in not knowing, that ARCP improperly overstated its AFFO and AFFO per share for 1Q14, 2Q14 and FH14, which resulted in ARCP filing a materially false and misleading 2Q14 quarterly report with the Commission and making materially misleading statements in its quarterly financial supplement, press release, investor presentation and earnings call.

**FIRST CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**(Both Defendants)**

82.     The Commission realleges and incorporates by reference Paragraphs 1 through 81, above.

83.     By engaging in the conduct described above, Defendants Block and McAlister, with scienter, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, and in connection with the purchase or sale of securities, have: (a) employed devices, schemes or artifices to defraud; (b) made one or more untrue statements of material fact or one or more omissions of material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in one or more acts, practices or courses of business which operated or would operate as a fraud or deceit upon any person.

84.     By reason of the acts, omissions, practices, and courses of business set forth in this Complaint, Defendants Block and McAlister have violated, and unless restrained and enjoined, will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R.§ 240.10b-5.

## SECOND CLAIM FOR RELIEF
**Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**(Both Defendants)**

85.     The Commission realleges and incorporates by reference Paragraphs 1 through 81, above.

86.     By engaging in the conduct described above, Defendants Block and McAlister provided knowing and substantial assistance to the other Defendant and/or ARCP, which, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, and in connection with the purchase or sale of securities, with scienter, has: (a) employed devices, schemes or artifices to defraud; (b) made one or more untrue statements of material fact or one or more omissions of material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in one or more acts, practices or courses of business which operated or would operate as a fraud or deceit upon any person.

87.     By virtue of the foregoing, Defendants Block and McAlister aided and abetted and, unless enjoined, will continue to aid and abet, the other Defendant's and/or ARCP's violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## THIRD CLAIM FOR RELIEF
**Aiding and Abetting Violations of Section 13(a) and**
**Rules 12b-20, 13a-11, and 13a-13**
**(Both Defendants)**

88.     The Commission realleges and incorporates by reference Paragraphs 1 through 81, above.

89.     Based on the conduct alleged above, ARCP violated Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-11 and 13a-13 promulgated

thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-11, 240.13a-13, which require issuers of registered securities to file quarterly and current reports with the Commission that, among other things, do not contain untrue statements of material fact or omit to state material information necessary in order to make the required statements, in the light of the circumstances under which they are made, not misleading.

90.     By engaging in the conduct alleged above, Defendants Block and McAlister provided knowing and substantial assistance to ARCP's filing of materially false and misleading filings with the Commission.

91.     By virtue of the foregoing, Defendants Block and McAlister aided and abetted and, unless enjoined, will continue to aid and abet, ARCP's violations of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-11 and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-11 and 240.13a-13.

**FOURTH CLAIM FOR RELIEF**
**Violation of Rule 13a-14**
**(Block)**

92.     The Commission realleges and incorporates by reference Paragraphs 1 through 81, above.

93.     Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14, requires each principal executive officer and each principal financial officer of an issuer to include certain certifications on, among other things, quarterly reports filed on Form 10-Q. The certifications include, but are not limited to, that the report does not contain any untrue statements of material fact, or omit material facts necessary to make statements made therein not misleading, and that the report fairly presents in all material respects the financial condition, results of operations and cash flows of the registrant.

94.     Block was ARCP's "principal financial officer" as that term is used in Rule 13a-14.

95.     Block certified that ARCP's Form 10-Q for the reporting period ending June 30, 2014, did not contain any untrue statements of material fact, or omit material facts necessary to make statements therein not misleading, when, as he knew, the filing materially overstated ARCP's AFFO.

96.     Block certified that ARCP's Form 10-Q for the reporting period ending June 30, 2014, fairly presented in all material respects the financial condition, results of operations and cash flows of ARCP, when, as he knew, the filing materially overstated ARCP's AFFO.

97.     By virtue of the foregoing, Defendant Block violated Rule 13a-14, 17 C.F.R. § 240.13a-14, promulgated under Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a).

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Block and McAlister, and each of their agents, servants, employees, attorneys and other persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from violating Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### II.

Permanently enjoining Block and McAlister, and each of their agents, servants, employees, attorneys and other persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from violating Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1 and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20,

240.13a-1 and 240.13a-13 and, in the case of Block, Rule 13a-14 thereunder, 17 C.F.R. §§ 240.13a-14.

## III.

Ordering Block and McAlister to disgorge any ill-gotten gains received from the conduct alleged in this Complaint and to pay prejudgment interest thereon.

## IV.

Ordering Block and McAlister to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## V.

Permanently barring Block and McAlister, pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the Exchange Act, 15 U.S.C. § 78l or that is required to file reports pursuant to Section 15(d) of the Exchange Act,15 U.S.C. § 78o(d).

## VI.

Granting such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action as to all issues so triable.

Dated: September 8, 2016
New York, New York

By:    *Sanjay Wadhwa*

Sanjay Wadhwa
Wendy B. Tepperman
Nancy A. Brown
Karen E. Willenken
Victor Suthammanont
Attorneys for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-1023 (Brown)
Email: BrownN@sec.gov